John McMAHON, on behalf of Mary McMahon, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 78–1053–G.

United States District Court, D. Massachusetts.

Sept. 21, 1979.

John J. Ford, Neighborhood Legal Services, Lynn, Mass., for plaintiff.

Bruce A. Singal, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM OF DECISION DENYING DISMISSAL

GARRITY, District Judge.

This case involves a challenge to the application of Title XVIII of the Social Security Act governing Medicare benefits, 42 U.S.C. §§ 1395 *et seq.* Plaintiff, on behalf of his now deceased wife, seeks an order compelling the Secretary of the Department of Health, Education and Welfare (the "Secretary") to provide plaintiff with the payments for nursing home services that his deceased wife received at Pilgrim House-at-Peabody Nursing Home ("Pilgrim House") and to issue regulations allowing payments to those erroneously placed in a noncertified portion of a facility but who otherwise receive Medicare-covered nursing services. Furthermore, plaintiff seeks a declaratory judgment stating that the Secretary's policy, which denies payments for skilled nursing services received solely because such services were provided to a beneficiary occupying a noncertified bed, violates the Medicare statute, the Equal Protection clause and the Due Process clause of the United States Constitution.

The amended complaint alleges jurisdiction under 28 U.S.C. § 1361, the Federal Mandamus Statute; 28 U.S.C. § 1331, Federal Question Jurisdiction; and 42 U.S.C. § 405(g), incorporated by reference in 42 U.S.C. § 1395ff, the Social Security Act. Plaintiff has consented to defendant's motion to dismiss Blue Cross as a party defendant, which motion was granted. Presently before this court for decision is defendant's amended motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Briefs were filed both before and after hearing oral arguments.

### Factual Background

Essentially, the facts in this case are not in dispute. On May 7, 1976 plaintiff's wife, now deceased, suffered a massive cardiovascular accident and was admitted to the Lynn Hospital. On June 1, 1976 she was transferred to the Louise Caroline Nursing Home and remained there until July 8, 1976, at which time she was admitted to the Shaughnessy Chronic Disease/Rehabilitation Hospital in Salem. At all times, plaintiff's deceased was a Medicare-eligible patient. However, on August 30, 1976 a letter to plaintiff from the Shaughnessy Hospital informed him that the Hospital's Utilization Review Committee[1] had determined that his wife's level of care at that institution rendered her ineligible for Medicare benefits and that she would no longer be reimbursed after September 2, 1976. Plaintiff moved his wife to the Pilgrim House on September 3, 1976.

Upon her admission, the Pilgrim House, relying on the determination of the Shaughnessy Hospital's Utilization Review Committee and her slow recovery, placed plaintiff's wife in a wing of the nursing home not certified for Medicare patients. It appears that plaintiff felt his wife was in need of and eligible for covered Medicare services at that time. While at the Pilgrim House the plaintiff's wife received extensive speech and physical therapy which was certified as medically necessary by her attending physician. In addition, she began a program of bladder training on September 28, 1976 and required a catheter when first admitted. Plaintiff applied to the fiscal intermediary, Blue Cross, for Medicare benefits and was refused. Upon reconsideration of his claim, Blue Cross stated that the claim was not reimbursable because plaintiff's wife was placed in a noncertified por-

1. The Medicare program requires that hospitals and skilled nursing facilities implement a utilization review plan which ensures the most efficient use of available health facilities by periodically assessing the medical necessity of the services provided to a Medicare patient. 42 U.S.C. §§ 1395x(j)(8), 1395x(k). If a Utilization Review Committee finds that the level of care is unnecessary, it is to terminate Medicare benefits for that level of care after notice to the patient.

tion of the nursing home. Plaintiff then requested and received a hearing before an Administrative Law Judge, arguing that Pilgrim House's ineligibility determination was incorrect. The Administrative Law Judge also, held that plaintiff's wife was not entitled to benefits because she occupied a bed in an uncertified wing of the nursing home. He refused to review the correctness of the eligibility determination itself. Plaintiff appealed, and the decision was affirmed. Having exhausted his administrative remedies, plaintiff now seeks review in this court.

### Statutory Framework

It may be helpful first to outline the relevant statutory framework. The Medicare program is divided into two parts: Part A, the section applicable to this case, reimburses inpatient hospital and post-hospital extended care services, while Part B establishes a system of supplementary insurance funded by individual contributions. Under the Medicare Act, a patient is entitled to have payments made on his behalf for "post-hospital extended care services for up to 100 days during any spell of illness", 42 U.S.C. § 1395d(a)(2), if a variety of conditions are met. First, the services received must be "post-hospital" services, which generally means services "furnished an individual after transfer from a hospital in which he was an inpatient for not less than 3 consecutive days before his discharge. . . ." 42 U.S.C. § 1395x(i). Second, the services received must be "extended care services". Such services include nursing care, bed and board, physical, occupational, or speech therapy, drugs, medical services, and other services necessary to the health of the patient involved. Furthermore, to constitute "extended care services" the above must be furnished to an inpatient of a "skilled nursing facility" by the "skilled nursing facility." 42 U.S.C. § 1395x(h). Accordingly, the third prerequisite of Medicare eligibility in this instance is that one be an inpatient of a "skilled nursing facility." Under 42 U.S.C. § 1395x(j) an institution (or a dis-

tinct part thereof) qualifies as a skilled nursing facility if it provides a variety of services and further, if it has a "transfer agreement" in effect with one or more hospitals having agreements in effect under section 1395cc.[2] This is designed to insure that patients are not charged for covered items. Finally, payment will be made only to those providers who fulfill the conditions of 42 U.S.C. § 1395f requiring among other items, a written request from the beneficiary for payment in such form as the Secretary has prescribed, a physician's certification of the services required and, with respect to patients receiving post-hospital extended care services, that no finding has been made pursuant to a system of utilization review that further services are not medically necessary. Hence only those skilled nursing facilities which meet the conditions of section 1395f and which are covered by an agreement as provided in section 1395cc(a) may receive Medicare payments. It is undisputed that the wing of the Pilgrim House to which plaintiff's wife was assigned was not covered by an agreement, and for this reason plaintiff's application for benefits was refused.

### Jurisdiction

 The plaintiff asserts jurisdiction under 42 U.S.C. § 405(g) as incorporated by 42 U.S.C. § 1395ff of the Social Security Act; 28 U.S.C. § 1361, the Federal Mandamus Statute; and 28 U.S.C. § 1331, federal question jurisdiction. We find that this court does not have jurisdiction under the relevant provisions of the Social Security Act. However, in our opinion, mandamus jurisdiction is proper. The availability of federal question jurisdiction in cases involving the Social Security Act is far from clear. *Weinberger v. Salfi*, 1975, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522; *Johnson v. Robison*, 1974, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389, and *Cervoni v. Secretary of Health, Education & Welfare*, 1 Cir. 1978, 581 F.2d 1010. Since mandamus jurisdiction is available in this instance, we shall leave entering the jurisdictional maze of

---

**2.** 42 U.S.C. § 1395cc speaks in terms of providers of services generally. However, 42 U.S.C. § 1395x(u) notes that the term "provider of services" includes a skilled nursing facility.

section 1331 and its interaction with section 405(h) of the Social Security Act for another day.

The Medicare Act, section 1395ff(b)(1)(C) of Title 42, grants an individual dissatisfied with a determination as to the amount of benefits under Part A of the Act, the opportunity for a hearing under 42 U.S.C. § 405(b), and the right to judicial review of the Secretary's final decision as is provided in 42 U.S.C. § 405(g). In cases involving determinations of the amount of benefits under Part A, however, judicial review is not available "if the amount in controversy is less than $1000." 42 U.S.C. § 1395ff(b)(2). The total amount of benefits at stake for the 33 day non-reimbursed period in the instant case is only $759.[3] Therefore, jurisdiction does not lie under the Medicare Act since plaintiff has failed to satisfy the jurisdictional amount.

▇▇▇ Mandamus jurisdiction is bestowed upon the district courts by section 1361 of Title 28, which states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Courts generally require the presence of three factors before the writ will issue: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Lovallo v. Froehlke*, 2 Cir. 1972, 468 F.2d 340, 343; *Caswell v. Califano*, D.Me.1977, 435 F.Supp. 127, *affirmed*, 1 Cir. 1978, 583 F.2d 9. However, commentators argue, and courts have agreed, that the appearance of some discretion on the part of the officer involved is not determinative of whether mandamus lies. Rather, the applicable statute, its legislative history, regulations promulgated pursuant to its terms and any other relevant aids must be considered also in determining the scope of discretion the officer

enjoyed, and accordingly, whether that discretion was abused. *Chaudoin v. Atkinson*, 3 Cir. 1974, 494 F.2d 1323; Byse and Fiocca, *Section 1361 of the Mandamus and Venue Act of 1962 and "Non-Statutory" Judicial Review of Federal Administrative Action*, 81 Harv.L.Rev. 308, 334 (1967). *See also*, *Work v. United States ex rel. Rives*, 1925, 267 U.S. 175, 177–78, 45 S.Ct. 252, 69 L.Ed. 561.

In the case before us, plaintiff asserts that the Secretary abused his discretion and breached a duty owed to plaintiff when he denied Medicare benefits on the sole ground that plaintiff's deceased occupied a noncertified bed. To determine whether we have jurisdiction under 28 U.S.C. § 1361 to consider plaintiff's claims, we must first ascertain the nature of the Secretary's duties under the relevant provisions of the Medicare Act, its legislative history and the regulations providing for its effective implementation.

Title 18 of the Social Security Act was designed, in part, to provide more comprehensive medical protection for the aged. Since it is a remedial Act, courts have construed its provisions, and accompanying regulations, liberally, and have counseled against a mechanical application of the technical terms of the Act if this would frustrate the goals Congress sought to implement. *White v. Califano*, D.Colo.1978, 1978 Medicare & Medicaid Guide (CCH Transfer Binder) ¶ 29,061. See also, *Rosenberg v. Richardson*, 2 Cir. 1976, 538 F.2d 487. Title 18, as noted above, provides for payments, on behalf of beneficiaries, only to eligible facilities, i. e., those facilities (or portions thereof) which provide skilled nursing care, 42 U.S.C. § 1395x(j), and have an agreement in effect with the Secretary, 42 U.S.C. § 1395cc. The purpose of the agreement is to ensure that beneficiaries receive proper medical and financial treatment.

The defendant contends that the presence of the above requirement coupled with the fact that plaintiff's deceased was in a por-

---

**3.** This is due to the deduction of the amount of coinsurance as is required by 42 C.F.R. 405.-740(a).

tion of the nursing home not covered by such an agreement (a noncertified bed) bars plaintiff from relief as a matter of law. Plaintiff agrees that his deceased was in a noncertified bed. He disagrees, however, with the determination of the Utilization Review Committee which placed her there, and insists that she received skill nursing services and would be eligible for benefits but for her placement in the noncertified bed.

According to 42 C.F.R. § 405.710, an individual who is a party to an "initial determination" and who is dissatisfied with it may request a "reconsidered" determination. Plaintiff's claim for coverage for nursing care submitted to the fiscal intermediary and its subsequent denial apparently constituted plaintiff's "initial determination" within the meaning of 42 C.F.R. § 405.704. In reconsidering the initial determination, "the Health Care Financing Administration shall review such initial determination, the evidence and findings upon which such determination was based, and any additional evidence submitted to the Social Security Administration or the Health Care Financing Administration or otherwise obtained by the intermediary . . . ." 42 C.F.R. § 405.715. Plaintiff requested such a reconsideration. However, the written notice of the reconsideration makes it clear that initial decision placing plaintiff in the noncertified bed was not reviewed at this time. Rather, plaintiff was denied benefits, at this early stage of the administrative process, solely because his deceased was in a noncertified bed:

> Our records show that Mrs. McMahon was not admitted to the portion of the Pilgrim House Nursing Home which was covered by the participation agreement. Instead she was placed in a part of the facility that was not certified for use by Medicare patients. Even if a valid reason existed for her having been placed in a non-certified part of the facility, her stay is not reimbursable by Medicare since the primary concern in this matter is whether or not a beneficiary's stay was in a portion of a facility that is specifically certified for Medicare patients. . . .

At no point, apparent from the Record, was the decision of the Utilization Review Committee reconsidered on the merits. Rather, this decision was insulated from review by consideration solely of the status of the deceased's bed. This procedure appears to be contrary to the Regulations promulgated, as well as to the remedial purposes of the Act. Minimally, the Secretary has a duty to comply with the regulations he has established, hence "[a] violation of a governmental agency's own regulations can be the basis for § 1361 jurisdiction." *Andujar v. Weinberger*, S.D.N.Y.1976, 69 F.R.D. 690, 693–694.

Furthermore, it appears from a small but growing body of precedent, that the "non-certified bed rule" is unlawful, and that plaintiff has a right to have the actual services needed, those rendered and the quality of the decision of the Hospital's Utilization Review Committee considered before benefits are denied. In *Wright v. Califano*, C.D.Cal., April 19, 1979, CV 77–4101–IH, *appeal filed*, several plaintiffs challenged the Secretary's policy denying benefits for skilled nursing services rendered, solely because such services were rendered in a noncertified portion of the nursing home.[4] The court found such denials to be a mistake of law and held the Secretary's policy invalid. Noting the remedial character of the Medicare Act, the court held that the Act should be liberally construed to allow payments to those who received skilled nursing services while occupying a noncertified bed, if they could establish the presence of the following factors: first, that the patient (a Medicare beneficiary) needed skilled nursing care when the services were rendered; second, that the patient in fact received skilled nursing care; and third, the patient either did not know or did not consent to place-

---

4. The court had jurisdiction of that action under 42 U.S.C. § 405(g), since the claims in that case exceeded $1000.

ment in a noncertified, nonreimbursable bed.

Similarly, in *Jamison v. Weinberger*, S.D. Iowa 1975, 1975 Medicare & Medicaid Guide (CCH Transfer Binder) ¶ 27,284, the court reviewed the Secretary's decision that occupying a noncertified portion of an extended care facility constituted an absolute bar to Medicare benefits, and found it too harsh a result, and contrary to the purposes of the statute. The court did not find the policy totally unlawful, but rather, noted that certain circumstances could justify payment even when a patient is in a noncertified bed. These circumstances included arbitrary actions on the part of the hospital's Utilization Review Committee in determining that a patient was not entitled to coverage when, in fact, a patient was in need of skilled nursing care. See also, *White v. Califano*, D.Colo.1978, 1978 Medicare & Medicaid Guide (CCH Transfer Binder) ¶ 29,061.[5]

It is not necessary for us to consider at this time whether plaintiff has a right to Medicare benefits. Suffice to say, the Secretary has a duty to abide by the regulations and afford a consideration of the initial determination and evidence upon which it was based at the "reconsidered determination" and, according to recent precedent, a duty to consider the services needed, the services rendered and the quality of the Utilization Review Committee's decision before denying benefits. Under recent precedent, the Secretary's duty may be more clearly defined now than it was at the time plaintiff's claim was denied. Therefore, we recognize that the Secretary may conform his actions voluntarily to the procedures set forth in *Wright* and *Jamison*, and mandamus may not be necessary. However, if he does not, the presence of his duty and the fact that no other remedy is available in this instance, convince us that mandamus jurisdiction is proper in this case, unless barred by the Social Security Act.

The defendant asserts that mandamus jurisdiction is foreclosed by section 405(h) of Title 42, incorporated in the Medicare Act by 42 U.S.C. § 1395ii. Section 405(h) states:

> The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.

The Supreme Court has not decided the issue of whether Section 405(h) of Title 42 precludes jurisdiction under the mandamus statute. *Mathews v. Eldridge*, 1976, 424 U.S. 319, 332 n. 12, 96 S.Ct. 893, 47 L.Ed.2d 18. Lower courts, however, have determined that Section 405(h) does not limit the court's mandamus jurisdiction. In *Elliott v. Weinberger*, 9 Cir. 1977, 564 F.2d 1219, aff'd sub nom. *Califano v. Yamasaki*, 1979, ── U.S. ──, 99 S.Ct. 2545, 61 L.Ed.2d 176 the court stated that "[u]nless the question sought to be litigated is within the express language of the limiting statute, there is no basis for concluding that Congress sought to limit or preclude judicial review." 564 F.2d 1219, 1227. Since the limiting statute addressed "claims" and the question in *Elliott* involved a denial of due process, the court found that jurisdiction was not expressly precluded. Similarly, in this case, plaintiff seeks a declaration that the policy of the Secretary is contrary to the Medicare Statute and the Constitution; thus, according to *Elliott*, this action should not be barred. Regardless of the nature of the relief sought, the court in *Elliott* further notes that there is no evidence which indicates that Congress sought to limit manda-

---

**5.** In *Wright, Jamison* and *White*, the court had jurisdiction under the Social Security Act as more than $1000 in benefits were at stake. To allow benefits on the basis of actual services rendered to those who have $1000 or more at stake regardless of bed placement, while applying the "noncertified bed" rule and barring those with less than $1000 at stake would be arbitrary, unfair and certainly contrary to the purposes of the Medicare Act.

mus at all by Section 405(h). In fact, section 405(h) was enacted before section 1361 and apparently the subsequent enactment of section 1361 did not evidence an intent that it be subject to any limiting statutes. Furthermore, Congress has specifically amended a limiting statute in at least one other instance, when Congress intended such a limitation to apply to section 1361.[6] In our opinion, then, section 405(h) of Title 42 does not bar the exercise of mandamus jurisdiction in this action. See *Caswell v. Califano*, D.Me.1977, 435 F.Supp. 127, *affirmed*, 1 Cir. 1978, 583 F.2d 9.

Since mandamus jurisdiction is present in this case, it is unnecessary to consider whether colorable constitutional claims are present and can be considered under 28 U.S.C. § 1331. Defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

---

**6.** See, for example, 38 U.S.C. § 211(a) (1970), which restricts court review of questions decided by the Veterans Administration. This provision was amended in 1970 to restrict specifically court review "in the nature of mandamus or otherwise".