THE ESTATE OF WILLIAM FRANKLIN BELL, SR., by Executrix of his Estate, Nell Rose Quinn Bell v. BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA

No. 9227SC263

(Filed 20 April 1993)

1. **Insurance § 134 (NCI4th)— health benefit plan—no coverage for services paid for by VA**

   A health benefit plan underwritten and administered by defendant BCBS which provides that no benefits are provided for "services or supplies which are furnished without cost to a participant under the laws of the United States" is not ambiguous and should be interpreted to exclude coverage for services which are paid for by the Veterans Administration.

   **Am Jur 2d, Insurance §§ 271, 276.**

2. **Insurance § 118 (NCI4th)— health benefit plan—explanatory booklet and contract contradictory—contract controlling—no ambiguity**

   Even if defendant's explanatory booklet for its health benefit plan was in conflict with the contract, the contract was not thereby rendered ambiguous, since the booklet stated unequivocally that it was not a contract and that the terms of coverage were contained in the contract.

   **Am Jur 2d, Insurance §§ 269 et seq.**

   **Group insurance: binding effect of limitation on or exclusions of coverage contained in master group policy but not in literature given individual insureds. 6 ALR4th 835.**

3. **Insurance § 338 (NCI4th)— hospital paid by defendant and VA—refund to defendant—insured not entitled to refund—absence of coordinating clause—statutes rendering clause unnecessary**

   Where decedent veteran was treated in a non-VA hospital, and the hospital received payment from the Veterans Administration and from defendant BCBS, which provided a health benefit plan covering decedent, plaintiff executrix was not entitled to a refund paid by the non-VA hospital to defendant BCBS reflecting VA's payment to the hospital for services rendered decedent veteran, even though there was no clause

ESTATE OF BELL v. BLUE CROSS AND BLUE SHIELD

[109 N.C. App. 661 (1993)]

coordinating benefits with the VA in defendant BCBS's contract, since 38 U.S.C. 1729(a)(2)(D) (1991) and 38 U.S.C. 1728(b)(2), together with the exclusion in the contract for services furnished without cost to a participant under laws of the United States, serve the same purpose of preventing double payment of claims that necessitates the clause coordinating benefits between insurers.

**Am Jur 2d, Insurance §§ 547 et seq.**

**Applicability of other insurance benefits exclusion, from coverage of hospital or health and accident policy, to governmental insurance benefits to which insured would have been entitled by prior subscription. 29 ALR4th 361.**

Appeal by plaintiff from judgment entered 17 February 1992, in Gaston County Superior Court by Judge Robert P. Johnston. Heard in the Court of Appeals 26 February 1993.

This action was brought by Nell Rose Quinn Bell, as the duly appointed executrix of the estate of William Franklin Bell, Sr., to recover money allegedly wrongfully retained by defendant Blue Cross and Blue Shield of North Carolina (BCBS). On 17 February 1992, the trial court granted defendant's motion for summary judgment, from which plaintiff appeals.

*Don H. Bumgardner for plaintiff-appellant.*

*Cansler, Lockhart & Evans, P.A., by George K. Evans, Jr., for defendant-appellee.*

McCRODDEN, Judge.

The facts of this case are not in dispute. William Bell was a disabled veteran and was entitled to Veterans Administration (VA) benefits. Among those benefits was an obligation to pay for medical care rendered to a veteran in a non-VA facility, for so long as necessary to stabilize the veteran's condition. Under the then-active VA directives, when a veteran was stable enough to be transported by ambulance to a VA facility, a bed would be offered to the veteran at the VA facility. If the veteran refused the bed, then the VA's obligation to pay for medical care rendered by a non-VA facility ended.

Bell was also a covered participant in the Gaston County Employee Health Benefit Plan, underwritten and administered by

ESTATE OF BELL v. BLUE CROSS AND BLUE SHIELD

[109 N.C. App. 661 (1993)]

BCBS. Benefits under the plan were provided pursuant to a Master Group Contract which allowed for payment of certain covered medical expenses incurred by participants.

In early April 1988, Bell was admitted to Charlotte Memorial Hospital for treatment of a heart condition, a service-connected disability. The VA determined that it was obligated to pay for Bell's hospitalization from 6 April through 11 April 1988. Bell was then offered admission to a VA facility but chose to stay in Charlotte Memorial. Upon his refusal to accept admittance to the VA facility, the VA's obligation to pay for his medical care ended.

BCBS paid Charlotte Memorial $2,442.44 on 6 June 1988 and $49,499.82 on 24 June 1988, for services rendered to Bell. In early December 1988, Charlotte Memorial refunded to BCBS $10,069.79, reflecting VA's payment to the hospital for April and May 1988 services. Appellant's action was to recover the amount of the refund, contending that this amount should have been paid to the estate.

The relevant provisions of the Master Group Contract (Contract or insurance contract) are as follows:

I. BENEFITS

This certificate provides coverage for the specified term for medically necessary reasonable and customary charges as determined by the Corporation for charges for covered medical expenses for treatment of disease or injury to participant as follows . . .

VI. EXPENSES NOT COVERED—EXCLUSIONS AND LIMITATIONS

No benefits shall be provided in this certificate on account of: . . . services or supplies for any occupational condition, ailment or injury arising out of and in the course of employment, or services or supplies which are furnished without cost to a participant under the laws of the United States or of any state or political subdivision thereof, except for inpatient treatment in Veterans Administration or armed forces facilities for non-service related medical conditions . . . .

The insurer also issued to its group health plan participants a handbook explaining the extent of coverage. The relevant portions of the handbook provide that:

Your Comprehensive Major Medical coverage does not provide · benefits for:

ESTATE OF BELL v. BLUE CROSS AND BLUE SHIELD

[109 N.C. App. 661 (1993)]

. . .

[a]dmissions to a company-owned hospital which provides services at no cost to the participant or a governmental hospital under the laws of the U.S. or any state or subdivision thereof or for services provided by the Veterans Administration [or]

. . .

[e]xpenses covered by any legislative acts.

---

Appellant presents only one question on appeal, and that is whether the trial court erred in granting appellee's motion for summary judgment. She contends in a series of arguments that the trial court incorrectly interpreted the insurance contract, specifically that portion which excludes from BCBS liability "services and supplies which are furnished without cost to a participant under the laws of the United States . . . ."

When a motion for summary judgment is granted, the question on appeal is whether there is a genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. *Hagler v. Hagler*, 319 N.C. 287, 289, 354 S.E.2d 228, 231 (1987). Since the material facts are not in dispute, the only issue before this Court is the interpretation of the insurance contract.

[1] Appellant first argues that the contract is ambiguous and that such ambiguity must be construed against the appellee. The contract does not include a definition of "services and supplies which are furnished without cost to a participant under the laws of the United States." Appellant contends that this phrase refers only to services and supplies for which a patient is never billed, such as services and supplies provided to a veteran for a service-connected disability in a VA facility, and that "services or supplies which are furnished without cost to the participant" does not mean the same thing as services or supplies which are paid for by a third party such as the VA.

Insurance contracts are to be strictly read against the insurer and any ambiguity is to be read in favor of the insured. An ambiguity exists where, "in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518,

ESTATE OF BELL v. BLUE CROSS AND BLUE SHIELD

[109 N.C. App. 661 (1993)]

522 (1970). Nonetheless, "ambiguity in the terms of an insurance policy is not established by the mere fact that the plaintiff makes a claim based upon a construction of its language which the company asserts is not its meaning." *Id.*

In the view of this Court, reading the BCBS policy to exclude coverage for services which are paid for by the VA is the only sensible interpretation. Under 38 U.S.C. 1728(b)(2) (1991), the VA is authorized to reimburse an organization which makes expenditures on behalf of a veteran for a service-related disability. Such services are, therefore, "without cost <u>to a participant under the laws of the United States</u>." (Emphasis added.)

Moreover, since the insurance policy at issue provides coverage only for "covered medical expenses," appellant's interpretation that it should provide coverage in situations in which there are no expenses to the participant defies logic. "Each word [in an insurance contract] is deemed to have been put into the policy for a purpose and will be given effect, if that can be done by any reasonable construction . . . ." *Wachovia* at 355, 172 S.E.2d at 522. Appellant's interpretation renders the exclusion meaningless.

[2] Appellant also argues that BCBS's explanatory booklet is in conflict with the Contract, thereby compounding the alleged ambiguity. She notes that the Contract provides coverage for non-service-connected disabilities in VA facilities, while the booklet disclaims coverage for any services provided by the VA. Although the booklet and the master Contract do appear to be contradictory, the booklet states unequivocally that it is not a contract and that the terms of coverage are contained in the Contract. This discrepancy does not make the Contract ambiguous. We find that the exclusion is not fairly and reasonably susceptible to the construction appellant offers.

[3] Finally, appellant calls our attention to the fact that the Contract does not contain a provision for coordinating benefits with the VA and argues that this is proof that the estate of the deceased is entitled to the overpayment. To prevent double payment of claims, the Contract provides for coordination of benefits between BCBS and a number of other insurers. Appellant's contention is that the VA may be analogized to another insurer with whom BCBS does not coordinate benefits and that, in that situation, BCBS would be obligated to pay regardless of whether the other insurer (and, hence, VA) paid.

Appellant's analogy, however, fails. The Contract does not provide for coordination of benefits with the VA because it is unnecessary. Under 38 U.S.C. 1728(b)(2), the VA is authorized to reimburse an organization which makes expenditures on behalf of the veteran for a service-connected disability. Conversely, under 38 U.S.C. 1729(a)(2)(D) (1991), the United States has the right to recover from a third party the reasonable value of services provided by the VA to a veteran for a non service-connected disability, to the extent that the veteran would have been entitled to receive payment for such services, had they not been provided by the VA. These two statutes, together with the exclusion in the Contract, serve the same purpose of preventing double payment of claims that necessitates the clause coordinating benefits between insurers. Accordingly, we find no merit in appellant's argument.

The judgment from which appellant appeals is, therefore,

Affirmed.

Chief Judge ARNOLD and Judge GREENE concur.