DIETZ, Judge.
 

 *131
 
 Derrick Sykes was injured in a car accident and sought care at Nash Hospital. After learning that another driver likely was liable for Sykes's injuries, the hospital made a choice that is the heart of this appeal: it chose not to bill Sykes's health insurer for his medical care and instead to rely on a statutory medical lien on any payments Sykes received from the other driver.
 

 *132
 
 That choice matters because there is a statute prohibiting hospitals from billing patients for charges that would have been covered by health insurance if the hospital had timely submitted a claim.
 
 See
 
 N.C. Gen. Stat. § 131E-91(c). The issue in this case is whether Section 131E-91(c) prevents a hospital from choosing to rely solely on a medical lien on a future liability judgment, rather than also billing the patient's health insurer.
 

 As explained below, we hold that hospitals may make this choice without abandoning their medical liens. First, the text of the applicable statutes permits it. Second, a contrary interpretation would frustrate the purpose of Section 131E-91(c) by forcing patients to pay unnecessary deductibles and other charges upfront-even though the hospital would have been content to wait and recover those costs from a court judgment or settlement later.
 

 Accordingly, the trial court did not err by permitting Sykes to introduce evidence of the hospital's lien and underlying medical charges, and by rejecting counter-evidence seeking to show that Section 131E-91(c) barred the hospital from billing Sykes directly for those charges.
 

 Facts and Procedural History
 

 In September 2015, Plaintiff Derrick Sykes and Defendant Emmanuel Vixamar were involved in a motor vehicle accident when Vixamar failed to stop at a red light and collided with the rear of Sykes's vehicle. Following the accident, Sykes sought medical treatment at Nash Hospital. The charges for Sykes's treatment at the hospital totaled $ 6,463.
 

 Two months later, the hospital sent Sykes a letter and accompanying notice of medical lien informing Sykes that the hospital asserted a lien on any liability recovery, medical payments, or uninsured/underinsured motorist coverage. Sykes had health insurance through Blue Cross Blue Shield but the hospital did not submit the charges to Sykes's health insurer and did not seek to collect the charges directly from Sykes.
 

 On 20 May 2016, Sykes filed this negligence action against Vixamar. Progressive
 
 *672
 
 Universal Insurance Company, who insured the owner of the vehicle that Vixamar was driving, later intervened as a defendant.
 

 During discovery, the parties deposed Demetrius Hagins, a billing clerk at Nash Hospital. Progressive asked Hagins a series of questions concerning the hospital's decision to rely on the medical lien to recover for its medical services, rather than billing Sykes's health insurer:
 

 Q. With that lien, it means you will obtain funds based on the outcome of any lawsuit that he has or settlement, correct?
 

 *133
 
 A. Correct.
 

 ...
 

 Q. Okay. In the event that his recovery is less than the amount you have in this lien, which is $ 6,463, what happens to the remainder of the balance?
 

 A. If it's less, we accept a pro rata share at settlement, and we adjust it off.
 

 Q. Adjust it off in full?
 

 A. No, we adjust the balance after the payment from the pro rata share.
 

 ...
 

 Q. The outstanding balance, or the remainder of the bill, okay, what happens to the remainder of the bill for Mr. Sykes?
 

 A. It is adjusted off. ... We don't bill the patient.
 

 Q. Okay. So the amount will be reduced to zero?
 

 A. Yes.
 

 Q. Okay. And if Mr. - if Mr. Sykes does not recover in this lawsuit, what happens - so a judgment or settlement of zero, what amount would be necessary to satisfy this September 15, 2015, bill?
 

 ...
 

 Q. If he receives nothing from this -
 

 ...
 

 A. We receive nothing.
 

 ...
 

 Q. Okay. And so the amount is written off?
 

 A. Yes.
 

 ...
 

 Q. Okay. Why would it have to be adjusted off?
 

 A. Timely filing.
 

 *134
 
 Q. Because you can't bill the insured, correct?
 

 A. Correct.
 

 Before trial, the court heard the parties' evidentiary motions. Sykes moved to exclude "any and all testimony and hypotheticals from the Nash County billing clerk regarding potential negotiations of bills as speculative." Progressive moved to exclude any evidence about medical costs because, as a matter of law, the amount Sykes owes the hospital is "zero." Progressive asserted that the hospital never submitted the claim to Sykes's health insurer, which in turn meant that Sykes "cannot be billed directly" because of the patient protection provision in N.C. Gen. Stat. § 131E-91(c). Therefore, Progressive argued, "there is no valid lien."
 

 Progressive also argued that "in the alternative let us provide testimony by Nash Hospital's representative." Progressive told the trial court that it would ask that representative whether it would be unlawful for the hospital to bill Sykes under N.C. Gen. Stat. § 131E-91 and "that would be [the] only question." Sykes's counsel responded, "If she asks that one question, we've got to ask him 50 other ones to get us back to the heart of the whole issue."
 

 After reviewing a copy of Hagins's deposition, the hospital billing records, and the notice of lien, the trial court ruled that the Nash Hospital lien of $ 6,463 was admissible because "the notice of the medical lien [was] filed in a timely manner" and "therefore, the medical lien of $ 6,640 - $ 6,643 is what is due and owed." The trial court then ruled that "[a]ny testimony by the Nash Hospitals billing clerk is not going to be allowed," noting that "[i]t's a double-edged sword that's for sure."
 

 At trial, Sykes introduced the statement of charges and the lien from Nash Hospital over Progressive's objection. Progressive sought to introduce portions of Hagins's deposition testimony to rebut the reasonableness of the lien amount, but the trial court reaffirmed its earlier ruling to exclude that evidence. During the jury charge, the trial court instructed the jury using the pattern jury instruction applicable where no evidence
 
 *673
 
 is offered to rebut the presumption that medical expenses are reasonable. Progressive again noted its objection to that instruction based on "not being allowed to put on rebuttal evidence."
 

 The jury returned a verdict in favor of Sykes for $ 7,778, the total amount of the medical expenses presented at trial. The trial court entered judgment on the jury's verdict and Progressive timely appealed.
 

 *135
 

 Analysis
 

 I. Admissibility of Hospital Bill
 

 Progressive first argues that the trial court erred by admitting evidence of the medical bills Sykes incurred at Nash Hospital for treatment resulting from the accident. Progressive contends that the hospital was barred by law from billing Sykes for that medical treatment, which in turn meant Sykes could not recover those costs in the lawsuit. Thus, Progressive argues, evidence concerning the hospital's medical lien and corresponding bills was irrelevant and inadmissible as a matter of law.
 

 Progressive's argument relies on the interactions between two statutes governing the payment and recovery of medical expenses. We briefly summarize these statutes for ease of understanding.
 

 First, our State's medical lien statute creates a lien on any personal injury recovery "in favor of any person... to whom the person so recovering ... may be indebted" for medical care "rendered in connection with the injury in compensation for which the damages have been recovered."
 
 N.C. Gen. Stat. § 44-49
 
 (a). Medical providers routinely use this statutory lien in personal injury cases to recover the amount owed for medical care from the judgment against the tortfeasor responsible for the injury.
 

 Second, our State's fair medical billing statute provides that a hospital "shall not bill insured patients for charges that would have been covered by their insurance had the hospital or ambulatory surgical facility submitted the claim or other information required to process the claim within the allotted time requirements of the insurer." N.C. Gen. Stat. § 131E-91(c). This provision protects patients from being billed for charges that should have been covered by their health insurance.
 

 Progressive contends that these two statutes, when combined, eliminate a hospital's medical lien any time the hospital fails to timely submit a claim to the patient's health insurer. This is so, Progressive asserts, because failing to timely submit the claim means the hospital cannot bill the patient. And, if the hospital cannot bill the patient, the patient cannot be "indebted" to the hospital-a requirement to assert a medical lien.
 

 We reject this argument. At the time the hospital provided medical care to Sykes, it expected to be paid for that care-whether by Sykes himself, by his health insurer, or by the person who caused Sykes's injuries. All of these parties are responsible for paying for that care through some principle of contract or tort law.
 
 See
 

 Shelton v. Duke Univ. Health Sys., Inc.
 
 ,
 
 179 N.C. App. 120
 
 , 123-26,
 
 633 S.E.2d 113
 
 , 115-17 (2006)
 

 *136
 
 (holding that the patient is required to pay medical expenses under a hospital's contract for medical care);
 
 Estate of Bell v. Blue Cross and Blue Shield of North Carolina
 
 ,
 
 109 N.C. App. 661
 
 , 666,
 
 428 S.E.2d 270
 
 , 272 (1993) (holding that a health insurer's payment obligations are controlled by contract);
 
 Nash Hospitals, Inc. v. State Farm Mut. Auto. Ins. Co.
 
 , --- N.C. App. ----, ----,
 
 803 S.E.2d 256
 
 , 260 (2017) (holding that a medical provider, through a medical lien, is entitled to its pro rata share of a patient's settlement with a tortfeasor).
 

 To be sure, when the hospital submitted a notice of lien to Sykes, and chose not to submit the claim to Sykes's health insurer, the hospital narrowed the sources from which it could be paid-in effect abandoning its ability to seek payment from Sykes and his health insurer. But we reject Progressive's argument that, when the hospital made this choice, the fair medical billing statute wiped away the debt. The statute protects patients from being billed for care that would have been covered by the patient's health insurer. N.C. Gen. Stat. § 131E-91(c). It is not intended to force hospitals to bill health insurers when other, alternative sources of payment also are available
 
 *674
 
 to satisfy the debt. Here, because Sykes received services from the hospital for which the hospital expected to be paid, and because there are sources through which the hospital lawfully can be paid for those services (without billing Sykes directly), Sykes remains indebted for the hospital's services under the plain language of the medical lien statute.
 
 N.C. Gen. Stat. § 44-49
 
 (a).
 

 Moreover, were we to interpret these statutes as Progressive requests, it would have the perverse effect of requiring hospitals to bill patients and their health insurers immediately, although there is another potential source of payment through the medical lien. This, in turn, would mean the fair medical billing statute-a statute designed to protect patients from unnecessary hospital bills-would instead force patients to pay deductibles and other charges upfront even though the hospital would have been content to wait and recover those costs solely from a liability judgment or settlement in the future. That is not what the text of the fair billing statute requires, and certainly not what the legislature intended.
 

 Progressive also asserts that although "this is a case of first impression in North Carolina, other jurisdictions have specifically addressed the need for an underlying, continuing debt to maintain a valid lien." But all of the cases on which Progressive relies address a separate issue-which we discuss in more detail below-concerning a hospital's attempt to collect
 
 more
 
 through a medical lien than what the hospital otherwise would have received for providing that care.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 *137
 

 Morgan v. Saint Luke's Hospital of Kansas City
 
 ,
 
 403 S.W.3d 115
 
 , 119 (Mo. Ct. App. 2013) ;
 
 Midwest Neurosurgery, P.C. v. State Farm Ins. Co
 
 .,
 
 268 Neb. 642
 
 ,
 
 686 N.W.2d 572
 
 , 577, 579 (2004).
 

 Progressive pays particular attention to
 
 Dorr v. Sacred Heart Hospital
 
 ,
 
 228 Wis.2d 425
 
 ,
 
 597 N.W.2d 462
 
 , 469-71 (Wis. Ct. App. 1999), which it claims "addressed identical facts to this Appeal." But
 
 Dorr
 
 , like the other cases Progressive cites, is readily distinguishable. As the Wisconsin Court of Appeals later explained in clarifying the
 
 Dorr
 
 holding, the contract between the hospital and health maintenance organization in that case included "a contracted 'per diem rate' flat fee arrangement that the hospital used to charge the HMO for treatment of HMO subscribers."
 
 Laska v. Gen. Cas. Co. of Wisconsin
 
 ,
 
 347 Wis.2d 356
 
 ,
 
 830 N.W.2d 252
 
 , 264 (Wis. Ct. App. 2013). "The hospital filed the lien against the patient's tort claim in an apparent attempt to recover the difference between the per diem rate the HMO agreed to reimburse and the price based on an itemized cost basis."
 

 Id.
 

 In other words, as with the other cases cited above,
 
 Dorr
 
 involved a hospital seeking to recover
 
 more
 
 than it had agreed by contract to charge for those medical services. In North Carolina, as in these other jurisdictions, defendants may introduce evidence showing that a hospital seeks more through its lien than it would have otherwise accepted from a patient or health insurer.
 

 But that is not what Progressive sought to do in this case. Progressive does not contend that the lien amount is greater than what Sykes would have paid had Vixamar not been responsible for the injuries. Instead, Progressive asserts that,
 
 by operation of law
 
 , when a hospital provides notice of a statutory medical lien to a patient but does not timely submit the underlying charges to the patient's health insurer, the hospital abandons the medical lien. We reject this argument and hold that a medical lien remains valid even if the hospital fails to timely submit those charges to the patient's health insurer.
 

 Of course, by choosing not to bill a patient's health insurer in these circumstances, the hospital takes the risk that, if the third party is not held liable or is judgment proof, the hospital will never be paid. But that is the hospital's choice to make. Our holding is merely that, when a hospital makes that choice, the interaction between the medical lien statute and fair billing statute does not eliminate the hospital's right to collect payment through a medical lien.
 

 Finally, Progressive identifies several harmful policy consequences of the hospital's billing practices in this case. For example, Progressive argues that federal regulations stemming from the Affordable Care Act
 
 *138
 
 require hospitals to bill uninsured
 
 *675
 
 patients "an average of the amounts billed to patients with health insurance." The implication (although Progressive does not state it expressly) is that hospitals will choose whether to bill a health insurer or to seek recovery solely through a medical lien in ways that inflate their average charges to health insurers, in turn inflating the amount they can bill uninsured patients. Whatever the merit of this claim, it is directed at the wrong branch of government. "This Court is an error-correcting body, not a policy-making or law-making one."
 
 Davis v. Craven County ABC Bd.
 
 , --- N.C. App. ----, ----,
 
 814 S.E.2d 602
 
 , 605 (2018). Enacting policy rules to stem rising healthcare costs falls far outside the appropriate role of the courts.
 

 II. Exclusion of Progressive's Billing Evidence
 

 Progressive next argues that the trial court improperly excluded its evidence challenging the reasonableness of the hospital's billing practices. We agree with Progressive's general statement of the law in this area. Indeed, to ensure that our holding above causes no confusion, we restate the long-standing evidentiary rule in these cases: Evidence that the hospital would accept less than the amount claimed in a medical lien to satisfy the underlying bill is admissible to challenge the reasonableness of the bill.
 
 See
 

 N.C. Gen. Stat. § 8-58.1
 
 (b) (the presumption of reasonableness of medical charges is rebutted by "sworn testimony that the charge for that provider's service ... can be satisfied by a payment of an amount less than the amount charged");
 
 see also
 
 N.C. Gen. Stat. § 8C-1, Rule 414. Defendants in these cases may seek discovery on this issue and courts should freely admit this evidence at trial.
 

 The flaw in Progressive's argument is that it never sought to admit this sort of evidence. The evidence Progressive sought to introduce concerned the hospital's failure to timely bill Sykes's health insurer and the resulting impact of the fair medical billing statute. Progressive intended to use that evidence to suggest that the hospital's actual bill was "zero" because the law prohibited the hospital from ever charging Sykes for those services. The trial court properly excluded that evidence because, as explained above, the interaction between the medical lien statute and fair medical billing statute does not render the bill uncollectible through a lien on Sykes's tort judgment.
 
 [1]
 

 *139
 

 Conclusion
 

 The trial court properly permitted Sykes to introduce evidence of the hospital's lien and underlying medical charges, and properly excluded counter-evidence seeking to show that the hospital was barred by statute from collecting those charges. We therefore find no error in the trial court's judgment.
 

 NO ERROR.
 

 Judges INMAN and ARROWOOD concur.
 

 [1]
 

 Because the trial court properly excluded this evidence, the court also properly used the pattern jury instruction which applies when no rebuttal evidence is presented, instead of the pattern instruction requested by Progressive, which applies when evidence is presented to rebut the reasonableness of the medical charges.
 
 See
 
 N.C.P.I. Civil 810.04C, 810.04D.